563 S.E.2d 104

**Susan JINKS as Personal Representative of the Estate of Carl H. Jinks, Respondent,**

v.

**RICHLAND COUNTY and Dr. Charles Eskridge, Defendants,**

**of whom Richland County is Appellant.**

No. 25446.

Supreme Court of South Carolina.

Heard Feb. 20, 2002.

Decided April 22, 2002.

300

Andrew F. Lindemann, William H. Davidson, II, David L. Morrison, and Alice Price Adams, of Davidson, Morrison and Lindemann, P.A., of Columbia, for appellant.

Bradford P. Simpson, Theile Branham, and John D. Kassel, of Suggs & Kelly Lawyers, P.A.; and James M. Griffin, of Simmons & Griffin, L.L.C., all of Columbia, for respondent.

James E. Parham, Jr., of Irmo, for defendant Dr. Charles Eskridge.

Justice BURNETT:

Respondent Susan Jinks brought this wrongful death and survival action on behalf of her husband, Carl H. Jinks (Jinks and his wife are referred to collectively as "Jinks"), who died while incarcerated at Appellant Richland County's (County's) Detention Center. The jury returned an $80,000 verdict in Jinks' favor for wrongful death. County appeals.

## FACTS

On October 14, 1994, Jinks was arrested for failure to pay child support, booked, and confined at County's Detention Center. He died at the Detention Center four days later.

In 1996, Jinks brought an action in the United States District Court against County, its detention center director, and the detention center physician alleging the defendants violated 42 U.S.C. § 1983 (1994). In addition, the complaint alleged supplemental state claims of outrage and negligence under the South Carolina Tort Claims Act (the Tort Claims Act). *See* S.C.Code Ann. §§ 15–78–10 to –200 (Supp.2001). The district court granted the defendants' motions for summary judgment on the Section 1983 claim,[1] issued an order declining to exercise jurisdiction over the remaining state claims, and dismissed the state claims without prejudice pursuant to 28 U.S.C.A. § 1367(C)(3) (1993).

On December 18, 1997, sixteen days after the federal judge issued his order dismissing the state claims, Jinks filed the present wrongful death and survival action alleging various negligent acts by County and its detention center physician. County answered, claiming immunity from suit under the Tort Claims Act, violation of the statute of limitations, collateral estoppel, and other defenses.

## ISSUE

Does 28 U.S.C.A. § 1367(d) violate the Tenth Amendment to the United States Constitution?

## DISCUSSION

 County contends Jinks failed to bring this state court action within the two year statute of limitations provided by the Tort Claims Act and, therefore, the claim is barred. *See* § 15–78–100(a).[2] Jinks maintains the statute of limitations was tolled pursuant to 28 U.S.C. § 1367(d) (hereafter referred to as " § 1367(d)") while the original lawsuit was pending in

---

1. The Court of Appeals affirmed the district court. *Jinks v. McCaulley,* 163 F.3d 598 (4th Cir.1998).

2. Jinks filed the current action fourteen months after the statute of limitations expired.

federal court. In response, County asserts in enacting § 1367(d), Congress exceeded its Article III and Necessary and Proper Clause[3] powers, thereby violating the Tenth Amendment to the United States Constitution. Specifically, County claims § 1367(d) infringes on South Carolina's sovereign immunity by extending the length of time in which a person may sue a political subdivision of the State on grounds of negligence. We agree with County.

In relevant part, 28 U.S.C.A. § 1367 provides:

(a) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

. . .

(3) the district court has dismissed all claims over which it has original jurisdiction, . . .

(d) The period of limitations for any claim asserted under subsection (a) ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

. . . .

Section 1367 was adopted as part of the Judicial Improvements Act of 1990. Pub.L. 101–650, 104 Stat. 5089 (1990). "The statute ... gives federal courts supplemental jurisdiction to the limits the case-and-controversy clause of Article III of the [United States] Constitution permits." Charles A. Wright, Arthur R. Miller, Edward H. Cooper, 13 *Federal Practice and Procedure* § 3523.1 at 143 (2d ed. Supp.2001).[4]

---

**3.** U.S. Const. art. I, § 8, cl. 18.

**4.** Section § 1367 "codified the doctrines of pendent claim, pendent party, and ancillary jurisdiction under the more general label of 'supplemental jurisdiction'." Brian A. Beckcom, Note, *Pushing the Limits of the Judicial Power: Tolling Statutes of Limitations under 28 U.S.C. § 1367(D)*, 77 Tex. L.Rev. 1049, 1051 (1999).

■ The Tenth Amendment provides "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people." U.S. Const. amend X. "In a case like these, involving the division of authority between federal and state governments, the two inquiries are mirror images of each other. If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." *New York v. United States,* 505 U.S. 144, 156, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

[W]e ask two questions to determine whether a statute violates [the Tenth Amendment]. First, whether the regulation it embodies is within Congress' power as being within those enumerated in the Constitution. Second, whether, even if so, the means of regulation employed yet impermissibly infringe upon state sovereignty.

*United States v. Johnson,* 114 F.3d 476, 480 (4th Cir.1997), *referring to New York v. United States, supra.*

■ Article III of the United States Constitution establishes the basis for the judicial power of federal courts. By virtue of Article III and the Necessary and Proper Clause, Congress has power to enact laws that govern the practice and procedure in federal courts. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

■ The Necessary and Proper Clause, referred to as the "Sweeping Clause," provides that Congress is empowered "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States." U.S. Const. art. I, § 8, cl. 18. "[T]he Sweeping Clause is not a self-contained grant of power. It authorizes Congress only to pass laws that 'carry[ ] into Execution' powers the Constitution elsewhere vests in one or more institutions of the federal government." Gary Lawson and Patricia B. Granger, *The "Proper" Scope of Federal Power: A Jurisdictional Interpretation of the Sweeping Clause,* 43 DUKE L.J. 267, 274 (1993).

■ Within the Sweeping Clause, "necessary" does not mean absolutely required but "convenient, or useful, or essential to another." *McCulloch v. Maryland,* 4 Wheat. 316, 413, 17 U.S. 316, 4 L.Ed. 579 (1819). In order for a law to be "proper" within the meaning of the Clause, it must not violate the principles of state sovereignty. *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997).

County maintains § 1367(d) is neither necessary nor proper. First, County asserts since the tolling provision does not apply until after the federal action is dismissed, the statute is not "necessary" to federal practice and procedure. Second, County argues § 1367(d) is not "proper" because it interferes with a state's sovereignty by abrogating the statute of limitations. More particularly, County claims Congress lacks the constitutional authority to extend the statute of limitations governing actions in which the State has waived its sovereign immunity.

County correctly asserts § 1367(d) regulates state court practice and procedure as it tolls the statute of limitations for a state claim asserted in state court. However, the tolling provision also affects federal practice as it allows litigants to pursue actions in federal court without giving up access to state court in the event the federal jurisdictional basis is determined not to exist. It governs federal practice and procedure as it eliminates the need for federal judges to retain supplemental claims which would be dismissed as stale if pursued in state court.[5] Section 1367(d) is a useful "aid to the exercise of federal jurisdiction," and, therefore, is "necessary" within the meaning of the Necessary and Proper Clause. Brief for Petitioner at 27, *Raygor v. Regents of the Univ. of Minnesota,* 2001 WL 913842 (Case No. 00–1514).

We conclude, however, that, as applied to the States and their political subdivisions in tort actions, passage of § 1367(d) is not "proper" within the meaning of the Necessary and Proper Clause. In these circumstances, the tolling provision interferes with the State's sovereign authority to establish the extent to which its political subdivisions are subject to suit.

---

**5.** *See* Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional and Statutory Analysis,* 24 ARIZ. ST. L.J. 849, 983 (1992) (discussing pre- § 1367(d) approaches in determining propriety of discretionary dismissal of a supplemental claim).

[T]he constitution of the United States, which recognizes and preserves the autonomy and independence of the states,—independence in their legislative and independence in their judicial departments. Supervision over either the legislative or the judicial action of the states is in no case permissible except as to matters by the constitution specifically authorized or delegated to the United States. Any interference with either, except as thus permitted, is an invasion of the authority of the State and, to that extent, a denial of its independence.

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■■■ As a matter of sovereignty, the State has the authority to determine *whether* it consents to suit within its own court system. *Alden v. Maine*, 527 U.S. 706, 749, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (". . . the immunity of a sovereign in its own courts has always been understood to be within the sole control of the sovereign itself."); *Nevada v. Hall*, 440 U.S. 410, 414, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) ("[t]he immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries. Only the sovereign's own consent could qualify the absolute character of [its] immunity" from suit). In addition, the State has the authority to determine the *conditions* under which it consents to suit. *Alden v. Maine, supra* (suggesting state's waiver of immunity is limited to the parameters set forth by the state statute); *Beers v. Arkansas*, 20 How. 527, 529, 61 U.S. 527, 15 L.Ed. 991 (1857) (because waiver of sovereign immunity is "altogether voluntary," "it follows that [the State] may prescribe the terms and conditions on which [the State] consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires."). Most recently, the United States Supreme Court recognized that "although we have not addressed whether federal tolling of a state statute of limitations constitutes an abrogation of state sovereign immunity with respect to claims against state defendants, we can say that the notion at least raises serious constitutional doubt." *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, ——, 122 S.Ct. 999, 1006, 152 L.Ed.2d 27, 38 (2002); *see Ragan v. Merchants Transfer & Warehouse*

*Co., Inc.*, 337 U.S. 530, 533–34, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) (federal court "cannot give [state claim] longer life in the federal court than it would have had in the state court without adding something to the cause of action.").

■ Under the doctrine of sovereign immunity, governmental entities in South Carolina were protected from suits alleging tortious conduct by their employees until 1985. *Town of Duncan v. State Budget and Control Bd.*, 326 S.C. 6, 482 S.E.2d 768 (1997). In that year, the Court abolished the sovereign immunity of the State and all local governmental subdivisions. *McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985). In response, the General Assembly enacted the Tort Claims Act, reinstating sovereign immunity for the State and its political subdivisions with certain exceptions. § 15–78–20. The Tort Claims Act provides a limited waiver of governmental immunity and delineates the conditions upon which a claimant may pursue actions against the State and its political subdivisions. *Moore v. Florence School Dist. No. 1*, 314 S.C. 335, 444 S.E.2d 498 (1994); *Bayle v. South Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001); *see* § 15–78–40 (the State, its agencies, political subdivisions, and other governmental entities are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances" subject to certain limitations and exemptions in the Tort Claims Act). One of the conditions is that an action must be brought within two years of the date of loss. § 15–78–100(a).

Section 1367(d) potentially exposes political subdivisions to litigation and liability after the limitations period established by the State has expired. Accordingly, in tort actions against political subdivisions, § 1367(d) extends the waiver of the sovereign immunity of political subdivisions, thereby interfering with the State's sovereignty in violation of the Tenth Amendment and the Necessary and Proper Clause. *Lynn v. City of Jackson*, 63 S.W.3d 332 (Tenn.2001) (§ 1367(d) cannot extend statute of limitations in governmental tort claim actions in which State has consented to being sued without abrogating doctrine of sovereign immunity).

As a practical matter, we recognize our decision may affect a plaintiff's decision to pursue a tort action against a political subdivision in federal court. We conclude, however, that a

party's ability to choose its forum should not prevail over the State's sovereign authority to establish the terms under which its political subdivisions may be sued. Furthermore, our decision does not limit a plaintiff's ability to prosecute one action joining all federal and state law claims. Should a plaintiff fear the federal court system will be unable to determine her claims within the statute of limitations, she may bring the action in state court.

In summary, Congress exceeded its constitutional authority in enacting § 1367(d) to the extent it interferes with the States' sovereignty to establish the conditions upon which tort actions may be maintained against political subdivisions. Consequently, we conclude the tolling provision does not apply in these circumstances. *See Raygor v. Regents of Univ. of Minnesota, supra* (§ 1367(d) does not apply to dismissals of claims against nonconsenting States dismissed in federal court on Eleventh Amendment grounds). Accordingly, § 1367(d) did not toll Jinks' tort action against County. Since her complaint was not filed within the two year statute of limitations provided by the Tort Claims Act, her negligence claim against County is barred as untimely. The trial judge erred in holding otherwise.[6]

**REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.

---

6. In light of our disposition of this issue, it is unnecessary for us to address County's remaining arguments.